**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| Plaintiff, | ) | |
| | ) | **No. 1:22CR00314-02** |
| | ) | |
| vs. | ) | **Judge Trevor N. McFadden** |
| | ) | |
| **JOSEPH LEYDEN** | ) | |
| Defendant. | ) | |

<u>**DEFENDANT JOSEPH LEYDEN'S SENTENCING MEMORANDUM**</u>

NOW COMES the defendant, **JOSEPH LEYDEN,** by his attorney, **PATRICK E. BOYLE,** and submits this sentencing memorandum, and respectfully requests, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, and the Supreme Court's opinions in *Gall v. United States*, 128 S. Ct. 586 (2007) and *Kimbrough v. United States*, 128 S.Ct 558 (2007), that this Honorable Court impose a below guidelines sentence, such as 3 years probation with any and all appropriate conditions including 100 hours community service and $2000.00 restitution, or in the alternative, impose a sentence of 1 year of home confinement with community service and restitution, which here would be a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. Section 3553(a)(2).  In support of this sentencing request, Joseph Leyden offers the following:

**I.     INTRODUCTION**

Joseph Leyden is prepared to be sentenced by this Court for the offense he committed on the grounds of the United States Capitol in January of 2021.  Joseph has  accepted full responsibility for his conduct and wrongdoing by pleading guilty before this Court on May 23, 2023.  Mr. Leyden pled guilty to Count Three of his Indictment pursuant to a written plea

agreement with the government.  Count Three charged Joseph with Assaulting, Resisting, or Impeding an officer in violation of 18 U.S.C. Section 111(a)(1).  Joseph deeply regrets shoving this MPD officer and he sincerely apologizes for his wrongdoing.  Joseph clearly understands the gravity of his wrongdoing and the resultant worry he has brought to his supportive, law-abiding family.  Joseph hopes that when this Court considers all of the facts as set forth in the presentence investigation report, the numerous support letters, and the arguments made here and in open court, this Court will fashion and impose a reasonable sentence that reflects the seriousness of the offense along with the many factors in mitigation, that will still allow Joseph an opportunity to move forward as best as he can and still be an asset to his family and continue to lead a productive, law-abiding life.

## II.    JOSEPH LEYDEN'S BACKGROUND, WORK, AND CHARACTER

### A.    Childhood & Education

The Presentence Investigation Report does an excellent job summarizing the characteristics of  Joseph Leyden and he thanks Probation for their work on his case.  Joseph Leyden was born in Evergreen Park, Illinois in 1966 to Mary and Joseph Leyden.  Joseph's parents both grew up in Ireland and had immigrated to the U.S.A. in the hopes of a better life for themselves and their anticipated children.  It is extremely fitting that they baptized and named their middle son "Joseph" after St. Joseph the Patron Saint of fathers and workers.  As will be discussed below, Joseph Leyden's entire adult life has been devoted to being the best possible father to his three children and to 30 years of consistent labor as a Union Electrician.

When interviewed by Probation, Joseph said that he "experienced a pleasant home life throughout his upbringing, he even described it as a 'perfect world." (PSR at para. 57) It's

really a testament to Joseph's parents and the environment they created for Joseph and his brothers because the Southside of Chicago in the late 60s and early 70s was not often described as "perfect."  There were gangs and crimes just down the block from their home but thankfully Joseph was always drawn to his school, Church, sports, family and work and avoided all of the nearby bad influences.

Joseph's father worked in construction and his mother worked at a bakery just across the alley from his family's home."  Joseph "related his family was active in the Catholic Church all throughout his life."  (PSR at para. 57).  Joseph attended parochial school in his neighborhood with his four brothers and it was there he made numerous friends that he still has to this day.[1] Joseph graduated from St. Rita of Cascia High School in 1984.

**B.**   **Work History**

Even as a young boy, Joseph enjoyed working having a morning and evening newspaper route in his neighborhood.  After graduating high school, Joseph decided to immediately pursue a trade so that he could financially support himself and not be a burden to his hard working parents.  Consequently, Joseph completed an apprenticeship with the International Brotherhood of Electrical Workers (IBEW) Local 134 in the late 1980s.  (PSR at para. 76).  Joseph then worked as a skilled electrician supporting his family for 30 years.  As noted in the PSR:

"He was journeyman electrician for nearly 30 years.  He retired in 2016 due to

---

[1]Attached to this sentencing memorandum are four groups of support letters that were provided to undersigned counsel on Joseph's behalf.  There are approximately 59 such support letters, by far the most counsel has ever received on behalf of a client.  They come from Jospeh's family and friends and are a testament to the friends and relationships he has made and maintained over the 57 years of his life.  The letters come from people of all ages and walks of life including several from friends in law enforcement. Counsel and Joseph sincerely thanks the Court for taking the time to review and consider these letters.

health issues and receives a pension.  IBEW records confirm he retired due to disability."  (PSR at para. 77).

C.   **Family Life**

As noted in the PSR:

"In addition to his parents and brothers, Leyden draws on support from his wife of almost 30 years, Margaret (Peggy) Leyden.  He expressed Peggy is "the rock" of the family.  Mrs. Leyden is employed as a teller at a nearby bank.  The couple share three adult children: Abbey (22), Kylee(25) and Patrick (27).  Abbey and Kylee are both college students who reside with the Leyden and his wife, who bear the burden of tuition payments."  (PSR at para. 60)

Joseph and Peggy's first born son was raised with a strong patriotism to this country and a sincere belief in service to others so it was not surprising he volunteered and served in the United States Marine Corps.  (PSR at para. 61).  Also in the spirit of service to others, Kylee and Abbey are studying to be teachers and nurses respectfully.  The Leyden children have all submitted support letters on behalf of their father.  Obviously Joseph is extremely proud of his children and the great young adults that they have become.

Joseph derives great strength and comfort from his life-long faith.  He and his family attend services at St. Cletus Catholic Church in La Grange, Illinois.  Joseph and Peggy live in the same home that they have owned for nearly 30 years.  Joseph is not active on social media and he has never been associated with any gang or extremist group.  (PSR at para. 63)

III.   **JOSEPH LEYDEN'S SIGNIFICANT HEALTH CONDITIONS**

The presentence investigation report notes in great detail (*See* paras. 64-73 of the PSR) the various serious physical  health concerns Joseph Leyden is dealing with and currently receiving treatment for.  The report notes that Joseph suffers from sever sleep apnea and he "requires the use of a continuous positive airway pressure (CPAP) nightly."  (PSR para. 66).

4

Joseph also has high blood pressure, high cholesterol and gastroesophageal reflux disease.  (PSR at para. 67).  Joseph currently is awaiting treatment for a torn left rotator cuff and an umbilical hernia.  (PSR at para. 69).  Joseph also suffers from Budd-Chiari syndrome (BCS), an uncommon hereditary disorder that can result in blood clots if untreated.  (PSR at 70).

## IV.    ADVISORY GUIDELINE RANGE

Again, Joseph promptly accepted full responsibility for his wrongdoing and pled guilty pursuant to a written plea agreement with the government.  The parties agreed that the base offense level was 14 pursuant to U.S.S.G. Section 2A2.2(a) and that is increased by 6 levels because the victim here was an officer on active duty taking the offense level up to 20 pursuant to U.S.S.G. Section 3A1.2(c)(1).  Because of his timely acceptance of responsibility, Joseph offense level is reduced to 17.

Consequently, the defendant has no objection to the Guideline calculations as set forth on pages 14-15 of the PSR.  It is anticipated that at sentencing the adjusted offense level (with acceptance of responsibility) will be 17 with a criminal history category of I (zero criminal history points) which results in an advisory guideline range of 24 to 30 months.

However, as the Court is well aware, the federal Sentencing Guidelines are not binding, but merely advisory.  Moreover, the advisory guideline range is not presumed to be the "correct" sentence to be imposed; indeed it is error for a sentencing court to presume the advisory range is the appropriate sentence.  *Gall v. United States,* 552 U.S. 38, 128 S.Ct. At 596-97 (2007); *Nelson v. United States*, 129 S.Ct. 890 (2009) ("The Guidelines are not only *not mandatory* on sentencing courts; they are also *not to be presumed reasonable*.") (emphasis in original); *Spears v. United States*, 129 S.Ct. 840 (2009) (similar).  Instead, the Court's sentencing decision is to be

individualized and committed to its sound discretion guided only by the parameters of the

statutory maximum and minimum sentence, the factors enumerated in 18 U.S.C. Section 3553,

and the directive to impose a sentence "sufficient but not greater than necessary" to comply with

the purposes of sentencing set forth in Section 3553(a)(2). *United States v. Hokins*, 498 F.3d

622, 629 (7th Cir. 2007). As is often mentioned, "It has been uniform and constant in the federal

judicial tradition for the sentencing judge to consider every convicted person as an individual and

every case as a unique study in the human failings that sometimes mitigate, sometimes magnify,

the crime and the punishment to ensue." *Gall*, 128 S.Ct. At 588 (2007), quoting *Koon v. United*

*States*, 518 U.S. 81, 113 (1996). As aptly stated by a sentencing court not long ago:

> [S]urely, if ever a man is to receive credit for the good he has done, and his
> immediate misconduct assessed in the context of his overall life hitherto, it should
> be at the moment of his sentencing, when his very future hangs in the balance.
> This elementary principle of weighing the good with the bad, which is basic to all
> the great religions, moral philosophies, and systems of justice, was plainly part of
> what Congress had in mind when it directed courts to consider, as a necessary
> sentencing factor, "the history and characteristics of the defendant.

*United States v. Adelson*, 441 F.Supp.2d 506, 513-14 (S.D.N.Y. 2006)

The basis of this tradition is the notion that the "punishment should fit the offender and

not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949); see also *Pennsylvania*

*ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937) ("For the determination of sentences, justice

generally requires consideration of more than the particular acts by which the crime was

committed and that there be taken into account the circumstances of the offense together with the

character and propensities of the offender.") Thus, this Court should take into account much

more than the offense committed by Joseph Leyden when fashioning a unique sentence that is

reasonable and appropriate here.

## V.   SECTION 3553(a), ADDITIONAL REASONS FOR A VARIANCE AND LOWER SENTENCE, AND JOSEPH LEYDEN'S SENTENCING REQUEST

### A.   Section 3553(a)

The sentencing purposes of Section 3553(a)(2) are: (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of a defendant; and (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  *See* 18 U.S.C. Section 3553(a)(2).  Further, whenever applicable, a sentencing court must consider the following factors:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant (Section 3553(a)(1));
(2)     the kinds of sentences available (Section 3553(a)(3));
(3)     the sentencing guidelines and pertinent policy statements issued by the Sentencing Commission (Section 3553(a)(4)-(5)); and
(4)      the need to avoid unwarranted sentencing disparities among similarly situated defendants (Section 3553(a)(6)).

As the Supreme Court has emphasized relating to the district court's discretion, the punishment imposed "should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 131 S.Ct. 1229, 1240 (2011).  Moreover, it is the sentencing court's decision what weight to place on any one of these individual factors.  *Gall v. United States*, 552 U.S. 38, 47 (2007) ("We reject, however, an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range.  We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence."); *United States v. Johnson*, 471 F.3d 764, 766 (7th

7

Cir. 2006)("the statute does not weigh the factors.  That is left to the sentencing judge, within the bounds of reason, which are wide").

In light of the law cited above, the tenets of Section 3553(a), and the facts both of this case, the totality of Joseph Leyden's life and his current physical and personal situation, we respectfully request that this Court impose a non-custodial sentence – either probation or a term of home confinement – along with any other conditions (such as the agreed $2000.00 restitution and 100 hours community service) that the Court deems appropriate..  Given all of the facts outlined herein, such a sentence will be "sufficient, but not greater than necessary" to accomplish all of the sentencing goals set forth in 18 U.S.C. Section 3353 and will allow Joseph Leyden to support and care for his parents, wife, children and community.

### B.      The Nature & Circumstances of the Offense

Joseph Leyden pled guilty pursuant to a written plea agreement with the government wherein he admitted his wrongdoing as set forth in the factual basis for his plea and as set forth in the PSR at pages 5-7.  The PSR notes that the defendant also provided a written statement through defense counsel wherein he admitted his involvement in the offense but provided additional information providing context and mitigation regarding his aberrant actions:

> "A factual basis describing Mr. Leyden's conduct is set forth in his plea agreement.  Mr. Leyden is sincerely remorseful for the conduct which led him to be charged in this case, and he plans to express that remorse to the Court at the time of his sentencing.
>
> Joseph traveled with his brother Daniel from Chicago to Washington D.C. with the sole purpose and intent to see President Trump's farewell speech.  Joseph Leyden is not active on social media nor is he a member of any political groups. Police body worn video footage from January 6, 2021 (which was provided in discovery) captures the events leading up to Joseph's criminal conduct and that

8

conduct.  Undersigned counsel intends on providing the Court with a copy of this relevant footage prior to the sentencing hearing.

The footage reveals that Joseph Leyden was part of the crowd that gathered on January 6, 2021.  Joseph was wearing normal clothes, not wearing any tactical gear, was not disguised in any way and was not masked to obscure his identity. He was not armed in any way and had no intention of getting involved in any altercation that day.  The video captures that Joseph impulsively reacts to seeing a young woman getting pushed and landing at his feet and he unfortunately reacts by pushing (with an open hand) the side of the officer.  Another officer then immediately shoves Joseph and he goes backwards, landing on his back.  Joseph's offense conduct is literally one second in time.  This is not to minimize his wrongdoing in any way just an attempt to put this aberrational conduct in some context."  (PSR at paras 36-38).

In mitigation, the context and nature of Joseph Leyden's conduct matters.  He had no intention of engaging in any physical confrontation that day.  He was not escalating the situation unlike several others who were in his proximity.  He reacts instinctively when he sees a young, non-violent woman (the same approximate age as his daughters) land at his feet.  His open-handed shove was not a product of any premeditated malice just a spontaneous reaction.  If anything, he consciously used an open hand to the side of the officer's arm minimizing any chance of injury to the officer which thankfully was the case.  This distinction matters under 3553 because it is not considered under the guidelines.  The guidelines treat an assault with an open hand the same as an assault with a fist to the face.  The brevity of Joseph's conduct should also matter and that brevity is also not considered under the guidelines.  His shove was literally a second in time and then Joseph "immediately retreated when met with resistance according to both the statement of the offense as well as the defendant's characterization of the events as contained in the acceptance of responsibility statement."  (PSR at para. 106).

**C.**   **History & Characteristics of the Joseph Leyden**

Joseph Leyden is a 57-year-old man, with deep connections to his family and community. He was a skilled union electrician and worked his whole adult life, and he is currently disabled. He is married and the proud father of three children. He is stable, has zero criminal history points and has been a model defendant while on bond.  (*Please see* PSR at para. 106).

**D.**   **The Kinds of Sentences Available**

This Court has great discretion in the types of sentences available to Joseph Leyden. The defendant is eligible for not less than one nor more than five years probation because the offense is a Class D Felony.  18 U.S.C. Section 3561(c)(1).  The defendant requests that if this Court imposes a sentence of probation that the sentence should also require the performance of 100 hours of community service along with the $2,000.00 restitution order pursuant to U.S.S.G. Section 5B1.3(a)(2)..

This Court must now consider all of "the kinds of sentences available" by statute,  even if the "kinds of sentences . . . established [by] the guidelines" zones recommend only a prison term. *See, Gall*, 128 S.Ct. at 602 and n.11.  Congress has directed that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society . . ." *See,* Pub. L. No. 98-473, Section 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. Section 3551 note). Following this guidance, several courts in the Northern District of Illinois (where undersigned counsel primarily practices) have rejected Guidelines sentences of BOP incarceration and have instead sentenced defendants to extended periods of supervised release with significant

10

conditions.  *See, United States v. Wendy Neal-Cooley*, 02 CR 454 (J. Moran) (rejecting the

Guideline range of 70-97 months in a drug distribution case and sentencing the defendant to time

served, supervised release, and home confinement with electronic monitoring based on post-

offense conduct and family circumstances); *United States v. Shante Frazier*, 03 CR 718 (J.

Castillo) (rejecting the government's requested sentence of 34 months in a bank robbery case and

sentencing the defendant to time served, supervised release, and home confinement with

electronic monitoring based on post-offense conduct, medical concerns, and family

circumstances); and *United States v. Dorothy Durham*, 06 CR 297 (J. Darrah) (rejecting the

Guideline range of 12-18 months and placing the defendant on probation with home confinement

and electronic monitoring based in part on post-offense treatment and rehabilitation.)

     If the Court determines that some form of custodial sentence is appropriate for Joseph,

the Court may impose a term of supervised release of not more than three years.  Joseph Leyden

has no objections to and agrees with the various conditions of supervised release as proposed by

the PSR on pages 16-17 of the report.

     Joseph Leyden is clearly not historically or ordinarily a violent or a threat to society.  His

offense here was an aberration that he deeply regrets.   Consequently, here, Joseph Leyden's

requested sentence of 3 years probation with orders of community service and restitution, is

appropriate.  Such a sentence would satisfy the mandate that the Court impose a sentence that is

"sufficient, but not greater than necessary," to comply with the purposes set forth in sub-section

*18 U.S.S.C. Section 3553(a).*

**E.**     **Pertinent Policy Statements Set Forth in the Sentencing Guidelines**

This Court may consider certain policy statements promulgated by the United States

Sentencing commission before imposing a sentence in this case.  Among them is a list of matters

which may be relevant at sentencing, as found in 28 U.S.C. Section 994(d).  Section 994(d)

specifies, in pertinent part, that:

> "The Commission . . .shall consider whether the following matters, among others,
> with respect to a defendant, have any relevance to the nature, extent, place of
> service, or other incidents of an appropriate sentence, and shall take them into
> account only to the extent that they are relevant –
> (1) Age;
> (2) Education;
> (3) Vocational skills; . . .
> (6) Previous employment record; . . .
> (8) Community ties; . . .
> (10) Criminal history; . . .
> (11) Degree of dependance upon criminal activity for a livelihood." *Id.*

The above-listed factors are all relevant to Joseph Leyden and all weigh heavily in favor of this

Court imposing a sentence of probation in this matter.

As described in *United States v. Chu*, 714 F.3d 742 (2ⁿᵈ Cir. 2013), the goal of any

sentence is multifaceted and includes the need for the sentence imposed to "reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the

offense," as well as to "afford adequate deterrence to criminal conduct . . ." *Id.* at 746, n.6.  This

Court should impose a sentence which promotes respect for the law and dissuades the defendant

from committing any additional crimes.  Increased age bears a strong correlation with lower

recidivism.  According to the Sentencing Commission data, "recidivism rates decline relatively

consistently as age increases," from 35.5% under age 21, to 9.55 over the age of 50.  USC,

*Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 (May 2004).  The United States Parole commission has long included age as part of its Salient Factor Score because it is a validated predictor of recidivism risk.  USSC, *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score*, at 1,8, n.29 (Jan. 2005).  Although the Commission has not modified the Guidelines to take this data into account, courts are now free to rely on this data to vary from a guideline when the defendant's age predicts a greatly reduced risk of recidivism.

Joseph Leyden is now 57 years old.  Due to his age and maturity, Joseph falls on the lowest end of the recidivism statistics.  With the goals of sentencing in mind, it takes much less of a punitive sentence to promote respect for the law in an older, stable, sober and mature man such as Joseph.  Thus, this Court should find that a sentence of 3 years probation in this matter is appropriate.  Further, after the successful completion of such a sentence, Joseph would be at least 60 years old.

With regard to educational and vocational skills, both are good indicators of whether a defendant will recidivate and, thus, the needed severity of punishment by this Court.  The Commission's own research shows that educational attainment is relevant to risk of recidivism.  Overall, recidivism rates decrease with increasing educational level (no high school, high school, some college, college degree).  *Measuring Recidivism*, *supra*, at 12.  As noted in the PSR, Joseph graduated from St. Rita of Cascia High School and then he completed an apprenticeship with the International Brotherhood of Electrical Workers (IBEW) local in Chicago and was gainfully

employed as a skilled electrician for 30 years.  (PSR at paras. 76-77).  Joseph retired in 2016 due

to health issues and disability and receives a pension.  While he is no longer working as an

electrician, Joseph's experience and training allow him to still be productive and an asset to his

family and community.

 With regard to Joseph Leyden's lifelong, steady employment, this factor also weighs

heavily in favor of a sentence of probation rather than imprisonment.  The Commission's studies

demonstrate that stable employment is associated with a lower risk of recidivism.  *See,*

*Measuring Recidivism, supra,* at 12.  The Guidelines fail to consider if a defendant facing

sentencing had a lifetime of productive employment.  However, that fact is extremely important.

Being employed his entire adult life until his retirement due to disability, as Joseph was,

demonstrates that a defendant is responsible and is not engaged in criminality as a livelihood.  It

is also a strong predictor that a defendant will not be a recidivist.  A sentence of probation will

allow this Court to impose a sentence which will achieve all of the goals inherent in sentencing

and listed in *Chu, supra,* while keeping costs low, reserving the limited resources for

imprisonment to dangerous offenders, and allow Joseph to be present to help his elderly parents,

help his wife and children, and perform productive community service.

 Throughout his long, productive life, Joseph had no prior involvement with the criminal

justice system (other than misdemeanor traffic offenses that he successfully resolved).

Commission studies show that minimal or no prior involvement with the criminal justice system

is a powerful predictor of a reduced likelihood of recidivism.  While the Guidelines might

recognize his lack of any prior criminal felony *convictions,* it fails to adequately recognize that

this is a 57-year-old man who has *zero criminal history points*.  It is obvious that the offense here is a late in life/ aberration and that he will never commit another crime.  His arrest and resultant felony conviction has had an extraordinary impact on Joseph and his family.  Joseph feels that for the first time in his life he has brought shame and embarrassment to his proud immigrant parents and his beloved wife and children. The goal of specific deterrence has already been accomplished as evidenced by his performance on pre-trial release but certainly a lengthy term of probation would further ensure that and also provide general deterrence.  Joseph would also perform community service, pay restitution and submit himself to any and all conditions that this Court feels is appropriate to recognize  the seriousness of the offense.

 **F.**  <u>**The Need to Avoid Sentencing Disparities Among Similar Defendants**</u>

 The Supreme Court recently clarified the interplay between its decision in *Booker* and Congress' goals in creating the United States Sentencing Guidelines.  In *Peugh v. United States*, 133 S.Ct. 2072 (2013), the Court explained that "the *Booker* remedy, 'while not the system Congress enacted,' was designed to 'continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary."  *Id*. at 2080, quoting *Booker*, 543 U.S. at 264-65.  Consequently, this Court can look to similarly situated defendants on a nationwide basis to determine what potential sentencing disparities arise in this case, in an effort to ensure fairness in sentencing and compliance with the mandates of the Supreme Court and Congress.  The PSR notes the average sentences for defendants at a Final Offense Level of 17 and a Criminal History Category of I is 21 months imprisonment.  But it also notes that 8% of these defendants did not

receive a sentence of imprisonment in whole or in part.  The defense respectfully submits here that Joseph Leyden's momentary open-handed push must be at the lowest end of conduct that resulted in an Offense Level of 17 and that he is a 57-year-old with zero criminal history points taking him way outside of the heartland and presumably  making him much more similar to those 8% of defendants.  Further, in *United States v. Leffingwell*, 21-CR-005-ABJ a defendant who was in the Capitol building and punched one officer in the head, then punched another officer in the head, and then punched the first officer again.  Judge Berman Jackson varied down from the advisory guideline range of 24 to 30 months and sentenced Leffingwell to six months incarceration.  Consequently, a prison sentence for Joseph Leyden – considering the context and totality of his crime and his personal characteristics -- would create an unwarranted sentencing disparity.

      **G.**      **The Need to Provide Restitution**

      In determining an appropriate sentence, this Court must consider "the need to provide restitution to any victims of the offense."  *See*, 18 U.S.C. Section 3553(a)(7).  In this case, the government seeks, and Joseph Leyden has agreed to pay $2000.00 in restitution.  Joseph has agreed to pay this restitution despite the fact that he did not enter or damage any Capital buildings or property.  But he takes responsibility for his conduct and recognizes that resources were devoted to protecting this property which Joseph supports.  For a family of relatively modest means, $2000.00 is not an insignificant amount and is a significant collateral consequence of Joseph's conviction.

**H.     Joseph Leyden Poses Virtually No Risk of Recidivism**

At the risk of being redundant, it is important to emphasize the lack of a risk of recidivism that exists in this case for this defendant.  Joseph Leyden is now 57 years old, in difficult physical health, a first-time offender, a skilled union electrician, has been employed throughout his life, a loving son, husband and father, and has no history of illegal drug abuse. Based on all of the factors present with Joseph Leyden, the defense can confidently state, and the Court can confidently find, that Joseph poses virtually no risk of re-offending in any manner. Accordingly, the sentencing concerns of "incapacitation" and "protecting the public from further criminal activities by the defendant" are non-existent in this case, which means the need for a prison sentence of any length is significantly diminished, if not absent altogether.

The caselaw, too, makes it clear that in imposing the lowest sentence sufficient to account for the need to protect the public from further crimes of the Defendant, this Court should consider the statistically low risk of recidivism presented by Joseph Leyden's history and characteristics. *See, e.g., United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007)(affirming below-guideline sentence based on defendant's age, which made it unlikely that he would again be involved in a violent crime); *United States v. Darway*, 255 Fed.Appx. 68, 73 (6th Cir. 2007)(upholding downward variance on basis of defendant's first-offender status); *United States v. Hamilton*, 323 Fed.Appx. 27, 31 (2nd Cir. 2009)("the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); *United States v. Urbina*, 2009 WL 565485 at *3 (E.D. Wis. March 5, 2009)(considering low risk of recidivism indicated by defendant's lack of criminal record,

positive work history, and strong family ties); *United States v. Cabrera*, 567 F. Supp.2d 271, 279 (D. Mass. 2008)(granting variance because defendants "with zero criminal history points are less likely to recidivate than all other offenders"); *Simon v. United States*, 361 F.Supp.2d 35, 48 (E.D.N.Y, 2005)(basing variance in part on defendant's age of 50 upon release because recidivism drops substantially with age); *United States v. Nellum*, 2005 WL 300073, at *3(N.D. Ind. Feb. 3, 2005)(granting variance to 57-year-old defendant because recidivism drops with age); *United States v. Ward*, 814 F.Supp. 23, 24 (E.D. Va. 1993)(granting departure based on defendant's age as first-time offender since guidelines do not "account for the length of time a particular defendant refrains from criminal conduct" before committing his first offense).

## I.      <u>Satisfying the Purpose of Deterrence Does Not Require a Prison Sentence</u>

The consensus today is that lengthy prison sentences are not an effective deterrent.  The National Institute of Justice, Department of Justice, recently issued a one-page summary of the current state of empirical research about deterrence stating that "[t]he certainty of being caught is a vastly more deterrent than the punishment," "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime."  <u>See</u>, U.S. Dept. Of Justice, Office of Justice Programs, National Institute of Justice, *Five things to know About Deterrence* (July 2014).  Similarly, the evidence shows that nonviolent offenders do not need lengthy prison sentences to protect the public.  As he awaits sentencing, the defendant is a 57-year-old man in fragile physical health.  Luckily he has a stable home, a supportive family, and the skills and motivation to lead a productive life and still be an essential asset to his family and community.

**J.**     <u>**A Probationary Sentence is Both Punitive and Appropriate**</u>

The requested sentence of probation in this case, for this defendant, most certainly can fairly and best accomplish the goals of both punishment and deterrence.  To be sure, even a sentence of straight probation on a felony offense is not a "gift" or a "free pass."  It is a punitive sentence with real consequences and significant restrictions.  As the Supreme Court discussed at some length in *Gall:*

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.  Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.  *See, United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled." (Quoting *Griffin v. Wisconsin*, 483 U.S. 868. 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)) Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.  They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.  USSG Section 5B1.3.  Most probationers are also subject to individual "special conditions" imposed by the court.

*Gall*, 552 U.S. at 47-48.  Indeed, the Supreme Court in *Gall* explicitly recognized that a sentence of probation constitutes a "substantial restriction of freedom," and that "[a sentence of] probation is not granted out of a spirit of leniency" nor is a probation sentence "letting an offender off easy."  *Gall*, 552 U.S. at 48, fn.4, quoting Advisory Council of judges of National Council on Crime and Delinquency, Guides for Sentencing 13-14 (1957).  Quite the contrary, "the probation or parole conditions imposed on an individual can have a significant impact on both that person and society . . . Often these conditions comprehensively regulate significant facets of their day-to-day lives."  *Gall*, 552 U.S. at 48, fn.4, quoting N. Cohen, <u>The Law of Probation and Parole</u>

Sec 7:9 (2nd ed. 1999).

More recently, the Seventh Circuit echoed these thoughts in affirming a probationary

sentence which was far below the advisory Guidelines.  In *Warner*, the Seventh Circuit affirmed

a sentence of probation on a 69-year-old defendant who was a first-time offender, and who had

already paid a significant restitution in a parallel civil case.  *Warner*, 792 F.3d at 857-60.  The

Court in *Warner* went on to discuss why probation was a substantial punishment, and why the

other goals of sentencing, including deterrence, were sufficiently addressed by the probationary

sentence. *Id.* at 860-61.  "In these circumstances, we think probation was a sufficiently serious

sentence.  The Supreme Court reminded us in *Gall* that probation involves a 'substantial

restriction of freedom,' and faulted the court below for discounting that fact.  552 U.S. at 48.  In

sum, while "custodial sentences are qualitatively more severe than probationary sentences of

equivalent terms," [citing *Gall*] . . . and in that sense incarceration sends a stronger message than

probation does, but Section 3553(a) does not command courts to send the strongest message

possible; it commands them to impose a sentence that is 'sufficient, *but not greater than*

*necessary*' in the circumstances of each case." *Id.* at 860 (emphasis in original).  The Sentencing

Commission's commentary further confirms that a sentence of probation can be sufficiently

punitive and effectively deterrent, in addition to fostering rehabilitation:

> Probation is viewed by many as rehabilitative in nature . . . however, probation is
> also a punitive measure, and may be used as an alternative to incarceration,
> provided that the terms and conditions of probation can be fashioned so as to meet
> fully the statutory purposes of sentencing, including promoting respect for the
> law, providing just punishment for the offense, achieving general deterrence, and
> protecting the public from future crimes of the defendant.

*United States v. Brady*, 2004 WL 86414, at *8-9 (E.D.N.Y. Jan 20, 2004)(quoting U.S.

20

Sentencing Guidelines Manual ch. 5, pt. B, Intro. Cmt.).

**K.**     **Joseph Leyden's Demonstrated Full Acceptance of Responsibility and Post-Offense Conduct Warrants a Reduced Sentence**

The "history and characteristics" of Joseph Leyden – much of which is discussed above and in the numerous letters attached to this memorandum – also counsel strongly in favor of a sentence well below the advisory Guidelines.  He accepted full responsibility, pled guilty and did not engage in any frivolous disputes with the government attorneys.  He remains a constant and positive presence at home, providing support to his family and community.  He has been a model defendant while on pre-trial release.  He has not done anything even close to violating the law or an order of this Court.  Not merely by his words, but by his actions, Joseph has clearly demonstrated his self-rehabilitation during the intervening years between the conduct at issue and this Court's sentencing.  Demonstrated 'post-offense rehabilitation" was an appropriate basis for a downward departure even under the old, mandatory Guideline regime (*United States v. Sally*, 116 F.3d 76 (3rd Cir. 1997)(downward departure for post-offense rehabilitation was proper); *United States v. Core*, 125 F.3d 74 (2nd Cir. 1997)(same); *United States v. Neuendank*, 2004 WL 419915 (N.D. Ill. Feb. 23, 2004) (delay in prosecution either alone, or in a combination with post-offense rehabilitation, warrants downward departure), and is certainly a proper consideration now that the Guidelines are merely advisory.

The conduct at issue here is clearly a late in life aberration from what Joseph Leyden has done with his life, both before and after the conduct at issue.  This Court can grant a downward variance from the advisory guideline range for aberrant behavior under U.S.S.G. Section 5K2.20.  That guideline states that a "court may depart downward . . . if the defendant committed a single

criminal occurrence or single criminal transaction that," *inter alia,* "represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. Section 5K2.20(b).  A majority of sentencing courts follow the majority rule and interpretation of aberrant conduct as articulated in *United States v. Carey*, 895 F.2d 318 (7th Cir. 1990) in which the court held that "a single act of aberrant behavior . . . generally contemplates a spontaneous and thoughtless act rather than one which was the result of substantial planning."  This spontaneous and thoughtless standard rests on the belief that "an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may be arguably less accountable."  *Carey*, 895 at 325.  While not diminishing the seriousness of Joseph Leyden's wrongdoing here, his reactive, momentary, open-handed shove of the officer was just that – a spontaneous, thoughtless act that was not the result of planning or contemplated malice.  While he has accepted full responsibility and pleaded guilty to the conduct charged, there should be no doubt that the conduct underlying this case does not define Joseph Leyden, or the type of person, son, husband, father, and citizen he is.

**WHEREFORE**, Defendant Joseph Leyden respectfully requests that this Court exercise its discretion, consider all of the relevant factors of 18 U.S.C. Section 3553(a), the numerous character letters submitted to the Court in support of him, and all of the arguments made here and in open court, and sentence Mr. Leyden to a 3-year term of probation with $2000.00 restitution and 100 hours community service and whatever other conditions the Court deems appropriate. The need for "just punishment" and "deterrence" in the context of this case are adequately served by the stigma and collateral consequences of a felony conviction and the conditions of probation, including community service and restitution.  Such a sentence in no way diminishes the offense or society's interests, but appropriately recognizes the unique circumstances of this defendant and adheres to the mandate that this Court impose a sentence "sufficient, but not greater than necessary."  In the alternative, the defendant requests a sentence of home confinement with 100 hours of community service so that he can still be a present and supportive son, father and husband.

Respectfully submitted,

**JOSEPH LEYDEN,**

By:     s/ Patrick E. Boyle
By his Attorney Patrick E. Boyle

Law Offices of Patrick E. Boyle
**PATRICK E. BOYLE**
155 N. Michigan Ave. Suite 562
Chicago, IL 60601
(312) 565-2888

23

**CERTIFICATE OF SERVICE**

I, Patrick E. Boyle, an attorney, that on August 30, 2023, I electronically filed the foregoing **Sentencing Memorandum** with the Clerk of the United States District Court for the District of Columbia, by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished electronically in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF).

By:      s/ Patrick E. Boyle
         PATRICK E. BOYLE